UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WENDI MARIE NAGY,

                                    Plaintiff,

        -v-

ANDREW SAUL,
Commissioner of Social Security,

                                    Defendant.

_____

19-CV-300-MJR
DECISION AND ORDER

        Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 12).

        Plaintiff Wendi Marie Nagy brings this action pursuant to 42 U.S.C. §§405(g) and

1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security finding her ineligible for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") under the Social Security Act (the "Act").   Both parties have

moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.   For the following reasons, Plaintiff's motion (Dkt. No. 9) is granted, the

Commissioner's motion (Dkt. No. 10) is denied, and the case is remanded.

## BACKGROUND[1]

        Plaintiff protectively filed an application for DIB and SSI on October 27, 2015,

alleging a disability as of October 7, 2015, due to back and neck injuries; disc problems;

spinal problems; and anxiety.  (Tr. 13, 86-87, 152, 183).[2]  Her claim was initially denied

---

[1] The Court assumes the parties' familiarity with the record in this case.
[2] References to "Tr." are to the administrative record in this case.

on February 25, 2016.  (Tr. 86-87).  On April 21, 2016, Plaintiff filed a timely written request for a hearing.  (Tr. 100-101).

On February 12, 2018, a video hearing was conducted by Administrative Law Judge ("ALJ") Ellen Parker Bush.  (Tr. 35-63).  The ALJ appeared in Lawrence, Massachusetts, while Plaintiff and her non-attorney representative appeared from Jamestown, New York.  A vocational expert also appeared by telephone.

On April 5, 2018, the ALJ issued a decision finding Plaintiff not disabled.  (Tr. 10-29).  That decision became final when on January 7, 2019, the Appeals Council denied her request for review.  (Tr. 1-6).  This action followed.

## DISCUSSION

### I.    Scope of Judicial Review

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." Smith v. Colvin, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

- 2 -

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error. *Id.*

## II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in

Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.   Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.   At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."   *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

Under step one, the ALJ found that Plaintiff has not engaged in substantial activity since the alleged onset date, October 7, 2015. (Tr. 15). At step two, the ALJ concluded that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumber spine, status post L4-5 right discectomy and foraminotomy. (Tr. 15-17). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 17-18). Before proceeding to step four, the ALJ assessed Plaintiff's RFC, in pertinent part, as follows:

> [T]he claimant has the residual functional capacity to perform light work . . . except lift 20 pounds occasionally, 10 pounds frequently, could stand, walk and sit six hours each per day. The person could frequently climb stairs and ramps, occasionally climb ladders, ropes and scaffolds, frequently balance, occasionally stoop, kneel and crouch. No crawling and no overhead reach. The person would need to avoid concentrated exposure to hazards (hazards would be unprotected heights, machinery with external moving parts).

(Tr. 18). Proceeding to step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 23-24). At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, such as Photo Counter Clerk, School Bus

Monitor, and Gate Guard. (Tr. 24-25). Accordingly, the ALJ concluded that Plaintiff is not disabled under the Act. (Tr. 25).

IV.    *Plaintiff's Challenges*

Plaintiff argues, *inter alia*, that the ALJ erred by failing to develop properly the record because she did not obtain any medical records related to Plaintiff's December 2017 cervical spine surgery. She further argues that the ALJ erred by relying on the absence of treatment records following the surgery to assume that no further limitations resulted from the surgery. Relatedly, Plaintiff argues that the January 3, 2018 medical opinion of medical consultant Dr. H. Blumenfield, M.D., the only medical opinion relied upon by the ALJ in determining Plaintiff's RFC, was stale because Dr. Blumenfield admittedly did not consider any evidence related to Plaintiff's December 2017 cervical spine surgery. Finally, Plaintiff argues that since Dr. Blumenfield's opinion was stale and there was no other medical opinion evidence to support the ALJ's RFC finding, the ALJ improperly relied on her own lay opinion in determining the RFC. Based on these errors, Plaintiff contends, the case must be remanded. The Court agrees.

An ALJ has an affirmative duty to develop the record. *Lamay v. Astrue*, 562 F.3d 503, 508 (2d Cir. 2009); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982). While the ALJ is not required to obtain every medical record from every possible source, the ALJ is required to take steps to obtain additional medical records or medical evidence when there is an "'obvious gap" in the record. *Blackman v. Berryhill*, No. 1:16-CV-00869-HBS, 2018 WL 3372963 * 6, *7 (W.D.N.Y. July 11, 2018). "In order to discharge [the duty to develop the record], the ALJ should 'make every reasonable effort to help [the claimant] get medical

evidence from [her] own medical sources....'" *Id.* (citing 20 C.F.R. § 404.1512(b)(1)).

Reasonable efforts include "requesting the pertinent medical records" or subpoenaing

records. *Love v. Colvin*, No. 15-CV-00673-HBS, 2016 WL 4086948, *4 (W.D.N.Y. Aug.

2, 2016); see *Outman v. Comm'r of Soc. Sec.*, No. 1:16-CV-00988 (MAT), 2018 WL

3688312 *2 (W.D.N.Y. Aug. 2, 2018) (["A] failure to subpoena medical records which were

'reasonably necessary' is harmful error."). Requesting essential treatment records, but

not receiving them does not relieve the ALJ of her independent duty, "particularly since

the ALJ could have exercised [her] power to subpoena them . . .." *Harris v. Berryhill*, 293

F. Supp. 3d 365, 369 (W.D.N.Y. 2018) (ALJ and counsel made multiple requests for

treatment records from facility which were not returned, this Court found that "where the

ALJ declined to exercise his power to subpoena the missing records" the ALJ did not

make "every reasonable effort to complete the record."); see *Benjamin v. Colvin*, 16-CV-

1730 (LDH), 2017 WL 4402445, *8 (E.D.N.Y. Sept. 30, 2017).

Here, the absence of any records or medical opinion testimony regarding

Plaintiff's December 2017 cervical spine surgery and any limitations resulting from that

surgery left an "obvious gap" in the record. At step two, the ALJ found that Plaintiff suffers

from the severe impairment of degenerative disc disease of the cervical and lumber spine.

It is obvious that cervical spine surgery is major surgery and is directly related to this

severe impairment. Further, Plaintiff's treating neurosurgeon, Dr. P. Jeffrey Lewis, M.D.,

opined that her cervical disc herniations could be aggravating her lumber spine problems,

and that future surgery could be required to achieve an adequate fusion. (Tr. 458). As

far as the Court can ascertain, the ALJ took no steps to obtain any records or to secure

any additional medical opinion evidence related to this surgery, any limitations arising as

a result of the surgery, or any treatment received by the Plaintiff following the surgery. This was error.

The ALJ acknowledged the gap in the record. She gave great weight to Dr. Blumenfield's opinion, but noted that "his review did not include the claimant's recent cervical spine surgery, however those records still do not appear." (Tr. 23). She also stated that "no medical records concerning [claimant's recent cervical spine surgery] or the claimant's post-operative evaluations were submitted after the hearing and there is nothing to support that she would not be able to return to work consistent with the residual functional capacity following her recover from this recent surgery." (Tr. 21).

Having acknowledged the gap in the record, the ALJ's reliance on the absence of records of limitations after the surgery was also error. See *Warden v. Berryhill*, No.17-CV-1310-A, 2019 WL 2865035, *2 (W.D.N.Y. July 3, 2019) ("Plaintiff argues that the ALJ clearly acknowledged a gap in treatment records...and erred in not developing that record. Plaintiff further argues the ALJ then improperly assumed that the lack of treatment records indicated that Plaintiff was not treated and no longer needed medical care... This Court agrees."); *Kennedy v. Comm'r of Soc. Sec.*, No. 17-CV-908-FPG, 2019 WL 988889, *4 (W.D.N.Y. Mar. 1, 2019)(Remand was warranted where "the ALJ made a number of references in his decision to the lack of evidence in the record, which arguably could be resolved by the missing records."); see also *Thomas v. Barnhart*, No. 01 Civ. 518(GEL), 2002 WL 31433606, at *4 (S.D.N.Y. Oct. 30, 2002)("[A]n ALJ may not rely, as factfinders in adversarial proceedings customarily do, on the absence of probative evidence supporting the opinions of a claimant's expert, without making an affirmative effort to fill any gaps in the record before him.").

The Commissioner argues the ALJ did not have a duty here to develop the record because while Plaintiff was represented by a non-attorney representative at the hearing, an attorney oversaw her case. This argument is without merit. The ALJ has a duty to develop the record "independent of Plaintiff and her counsel, to ensure that the record was complete so that [the ALJ] could make a determination that is supported by substantial evidence." *Yarger v. Comm'r of Soc. Sec.*, 1:18-CV-00489 EAW, 2019 WL 1873165, *6 (W.D.N.Y. Apr. 26, 2019).

The ALJ also erred in this case because the only medical opinion she relied upon in determining Plaintiff's RFC was stale. An ALJ may not rely on medical source opinions that are stale when determining the claimant's RFC. *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) (citing *Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (remanding for staleness when ALJ relied on consultative examination that occurred prior to multiple surgeries over five years)); *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015); aff'd, 652 F. App'x 25 (2d Cir. 2016). A medical opinion may be stale if it does not account for a claimant's deteriorating condition. See, e.g., *Jones v. Comm'r of Soc. Sec.*, 10-CV-5831, 2012 U.S. Dist. LEXIS 119010 (E.D.N.Y. Aug. 22, 2016) (finding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition."); *Hawkins v. Colvin*, 15-CV-6394, 2016 U.S. Dist. LEXIS 148380 (W.D.N.Y. Oct. 26, 2016) ("the consultative medical examination report was 'stale' at the time of the ALJ's decision, insofar as the report was issued prior to plaintiff's degenerative disc disease becoming symptomatic."); *Girolamo v. Colvin*, 13-CV-06309, 2014 U.S. Dist. LEXIS 72749 (W.D.N.Y. May 28, 2014)

(ALJ improperly relied upon opinions of consulting physicians rendered "prior to [p]laintiff's second surgery in 2011 and the related diagnostic testing associated therewith."). In considering whether a medical opinion is stale, courts have frequently pointed to surgeries occurring subsequent to the medical opinion as evidence of the claimant's deteriorating condition. See, e.g., *Biro*, 335 F. Supp. 3d at 472 ("The Court finds the ALJ's consideration of Plaintiff's knee impairment unsupported by substantial evidence. First, [the consultative examiner's] opinion, which was rendered nearly five years before the ALJ's decision and before Plaintiff's September 2013 knee injury and two subsequent surgeries, was stale and not based on the complete medical record."); see also *Jeffords v. Comm'r of Soc. Sec.*, No. 17-CV-1085-MJR, 2019 WL 1723517, at *7 (W.D.N.Y. Apr. 18, 2019) (remanding for staleness when ALJ relied "almost exclusively, on medical opinions … prior to plaintiff's 2013 spinal surgery and 2014 fall"); *Morales v. Comm'r of Soc. Sec.*, No. 17 CV-341-FPG, 2019 WL 1109572, at *6 (W.D.N.Y. Mar. 11, 2019) (remanding where ALJ relied on consultative examiner's opinion that did not address "multiple hernia repair surgeries" and was rendered before two additional surgeries); *Pagano v. Comm'r of Soc. Sec.*, No. 16-CV-6537-FPG, 2017 WL 4276653, at *5 (W.D.N.Y. Sept. 27, 2017) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding.").

Here, in determining Plaintiff's RFC, the ALJ relied solely on the medical opinion of Dr. Blumenfield. As stated above, however, Dr. Blumenfield's opinion was stale as it did not include the Plaintiff's recent cervical spine surgery. Thus, the ALJ's decision to give it "great weight" is not supported by substantial evidence.

Because Dr. Blumenfield's opinion was the only medical opinion upon which the ALJ relied when determining Plaintiff's RFC, there is now a gap in the record necessitating a remand.  See *Smith v. Saul*, No. 17-CV-6641-CJS, 2019 WL 2521188, at \*2 (W.D.N.Y. June 19, 2019) ("Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence."); see also *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (rejecting medical opinion left gaps in the record triggering duty to develop the record).  "As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations ..., to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Nanartowich v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-6096P, 2018 WL 2227862, at \*11–12 (W.D.N.Y. May 16, 2018) (quoting *Gross v. Astrue*,No. 12-CV-6207P, 2014 WL 1806779, at \*18 (W.D.N.Y. May 7, 2014)); see also *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) ("In the absence of a medical opinion to support the ALJ's finding ... the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").[3]

---

[3] Plaintiff also argues that remand is required because the ALJ failed to account for the non-severe impairments of anxiety and depression in her RFC finding.  Because the case is being remanded anyway, the Commissioner should also consider this argument on remand.

## CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings (Dkt. No.

9) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) is

denied, and this case is remanded for further administrative proceedings consistent with

this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:       June 12, 2020
             Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge